UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JUSTIN SAAVEDRA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No.: 3:22-cv-00286-MOC-DSC<br><br>**AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Justin Saavedra, individually and on behalf of all others similarly situated, hereby brings this Class Action Complaint against Defendant Bank of America, N.A. ("BofA") and alleges as follows:

## INTRODUCTION

1. This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated BofA accountholders who have been deceived into using the Zelle money transfer service by BofA's misrepresentations and omissions, in marketing and contract materials, regarding the true operation and risks of that service. These risks include the real and repeated risk of insufficient funds fees ("NSF fees") or overdraft fees ("OD Fees") imposed by BofA as a result of Zelle transfers from consumers' checking accounts.

2. BofA markets Zelle to its accountholders as a way for consumers to send money they have in their account fast and "free," and that the service "won't cost you any extra money for the transaction." In short, BofA markets Zelle as an effortless, totally free way to send money. This is false. In fact, there are huge, undisclosed risks of using the service.

3. Moreover, Zelle in some cases operates as a credit device, sending money consumers don't have at the cost of high OD Fees assessed by their banks. Transactions may be approved even when there are insufficient funds in an account. But BofA never discloses that Zelle acts as a credit device, nor warns that it can do so.

4. BofA misrepresents and fails to disclose that Zelle's services cause unsuspecting consumers like Plaintiff to incur significant overdraft and NSF fees on their linked bank accounts.

5. Unfortunately, Zelle's operation, along with deceptive and incomplete marketing materials promulgated by BofA, means that users like Plaintiff end up paying huge amounts of bank fees, which BofA falsely assures users they will not receive and/or fails to warn users about.

6. BofA touts the Zelle service as convenient, simple, and totally free. But it misrepresents and fails to disclose that overdraft and NSF fees are a likely and devastating consequence of the use of the Zelle service.

7. Zelle prominently touts itself as offering "free" and "won't cost you any extra money for the transaction" money transfers. In light of these misrepresentations, Plaintiff and other reasonable consumers have no idea the service comes with these damaging risks.

8. These risks are known to BofA but is omitted from all of its marketing.

9. Had Plaintiff and the Class members known of the true operation and risks of the Zelle service—risks BofA alone was aware of and actively misrepresented—they would not have signed up for and used the Zelle service.

10. Plaintiff and the Class members have been injured by BofA's practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent BofA and Zelle from continuing to engage in its illegal practices as described herein.

## PARTIES

11. Plaintiff Justin Saavedra is a citizen and resident of Clifton, New Jersey.

12. Defendant Bank of America, N.A., is federally chartered bank with its principal place of business in Charlotte, North Carolina.

## JURISDICTION AND VENUE

13. Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and at least one member of the proposed classes are citizens of the State of New Jersey. Defendant is a North Carolina Corporation that has its corporate headquarters in North Carolina, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of North Carolina.

14. Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages claimed by Plaintiff and the Classes are estimated in good faith to exceed $5,000,000.00.

15. Venue is proper in this District under 28 U.S.C. § 1391, as Defendant resides in this district.

## FACTUAL ALLEGATIONS

**A. Overview**

16. It is free for BofA accountholders to sign up with Zelle, and in fact Zelle is integrated into the websites and mobile apps of BofA. In marketing and within the website and app itself, BofA encourages its accountholders to sign up for the Zelle service—a sign up that occurs quickly within the BofA website or mobile app. During that sign-up process, a user provides basic information to Zelle to link into the Zelle network.

17. Signing up allows the fast transfer of account funds to other Zelle users.

18. Created in 2017 by the largest banks in the U.S. to enable instant digital money transfers, Zelle is the country's most widely used money transfer service. Last year, people sent $490 billion in immediate payment transfers through Zelle.

19. The Zelle network is operated by Early Warning Services, a company created and owned by seven banks, including Defendant: Bank of America, Capital One, JPMorgan Chase, PNC, Truist, U.S. Bank and Wells Fargo.

**B.     BofA Falsely Markets Zelle as a Fast and Free Way to Transfer Money**

20. In its marketing about Zelle and during the Zelle signup process within BofA's mobile app or website, BofA makes repeated promises that Zelle is a fast and "free" way to send money. For example, BofA's website and mobile interface state:

## It's fast, easy and free. It's Zelle®.

21. BofA again promises about Zelle:

**Free**

Zelle® is free in our mobile app and Online Banking.

22. BofA also promises about Zelle: "There are *no fees* to send or receive money in our app" (emphasis added).

23. At no time in its marketing or during the sign-up process does BofA warn potential users of the true risks of using the Zelle service—including the risk of incurring NSF and overdraft fees by BofA. To the contrary, in its marketing and during the sign-up processes, BofA repeatedly touts Zelle as a vehicle for simple, fast and free money transfers—without a credit feature.

24. But Zelle's services cause unsuspecting consumers like Plaintiff to incur massive fees on their linked bank accounts—fees imposed by BofA. BofA is thus well aware of the risk that such fees will occur.

25. BofA misrepresents (and omits facts about) the true nature, benefits, and risks of the Zelle service, the functioning of which means that users are at extreme and undisclosed risk of expensive bank fees when using Zelle. Had Plaintiff been adequately informed of these risks, he would not have signed up for or used Zelle.

26. As alleged herein, Plaintiff had no idea that Zelle transfer could cause $35-each overdraft fees from BofA and was never informed thereof.

27. In marketing and promotions, BofA describes the Zelle service as simple, convenient, and easy—a no-fee way for consumers to transfer money.

28. BofA's marketing never warns consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

29. BofA conceals from users the punishing risk of NSF and overdraft fees on small dollar Zelle transactions.

30. BofA's marketing materials—including within its app and website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease and lack of any cost.

31. BofA knows that the Zelle service is likely to cause its accountholders to incur large bank fees.

32. BofA's representations regarding Zelle—which all users view during the sign-up process—are false and contain material omissions.

C. **BofA Never Informs Consumers Zelle has a Credit Feature**

33. As occurred with Plaintiff, Zelle transfers often cause hefty overdraft or NSF Fees from accountholders' banks or credit unions.

34. When a Zelle transfer occurs despite insufficient funds on an account, a user is being loaned funds to execute such a transfer.

35. While touting Zelle, BofA never informed Plaintiff and other reasonable consumers were never informed Zelle had a credit feature. To the contrary, BofA misrepresented that only funds already possessed by accountholders could be transferred via Zelle.

36. When a bank pays an overdraft requested on funds transferred via Zelle, it is extending credit. It is very expensive credit, indeed, according to the FDIC:

> For almost all study population banks operating an automated overdraft program, the main fee associated with the program was an NSF usage fee. Usage fees reported by these banks ranged from $10 to $38; the median fee was $27, charged on a per-transaction basis in almost all cases. In this context, a $27 fee charged for a single advance of $60 that was repaid in two weeks **roughly translated into an APR of 1,173 percent.** Many surveyed banks (24.6 percent) assessed additional fees on accounts that remained in negative balance status in the form of flat fees or interest charged on a percentage basis.

FDIC Study of Bank Overdraft Programs, 2008 (emphasis added).

37. But BofA never warns users that Zelle may act as a credit device, either in marketing materials or during the sign-up process.

38. Plaintiff and other reasonable consumers were not informed that BofA would make Zelle transfers for which they had insufficient funds—in effect, that BofA and Zelle would seek a loan on their behalf.

39. In fact, BofA makes marketing representations directly to the contrary. For example:

Move money in the moment.

> With *Zelle*, you can move money from your account to someone else's within minutes, so it's important you know and trust the person you're sending it to. Whether you're settling up IOUs before heading back from the beach or paying the babysitter before curfew hits, **your money is where you need it to be**, when you need it to be.

(emphasis added).

40. And again:

> **Your money travels safely** from the minute you hit send to the minute it hits their account. Straight from you to them. So you get peace of mind and so does your nanny, your neighbor, and your friend Ned who sold you his old TV.

(emphasis added).

41. The references to "your money" can have only one meaning: a Zelle transfer moves funds already possessed and owned by the accountholder—not loaned funds from the Bank.

42. BofA's marketing materials regarding the Zelle service were especially misleading in combination with its contract promises in the BofA Deposit Agreement (Ex. A hereto). In that document, BofA states:

> We pay overdrafts at our discretion, which means we do not guarantee that we will always, or ever, authorize and pay them. If we overdraw your account to pay items on one or more occasions, we are not obligated to continue paying future insufficient fund items. We may pay all, some, or none of your overdrafts, without notice to you. If we do not authorize and pay an overdraft, then we decline or return the transaction unpaid.

43. Read in conjunction with its marketing representations regarding Zelle, this provision reasonably promised to Plaintiff and other accountholders that BofA would not create or "authorize" overdrafts on Zelle transfers for which there were not sufficient funds in an account.

44. By "authorizing" overdrafts for Zelle transfers that it promised in marketing would be "free" and would only transfer money already possessed by an accountholder (not loaned by BofA), BofA both violated its marketing promises and violated its contract promises, including the implied covenant of good faith and fair dealing.

**D.    Plaintiff's Experience**

45. When Plaintiff signed up for Zelle he was not informed that Zelle's service had a significant "catch" and that significant fees and cost could result from use of this supposedly free service.

46. While Plaintiff has sometimes used Zelle without incident, on other occasions he has incurred expensive overdraft fees or NSF Fees from BofA as a result of using the service—penalties that far outweigh the benefits of the service.

47. For example, on August 23, 2021 and March 1, 2022, Plaintiff transferred $50 using Zelle through his Bank's mobile app.

48. Each transfer resulted in a $35 OD/NSF Fee.

## CLASS ALLEGATIONS

49. Plaintiff brings this action individually and as representatives of all those similarly situated under Fed. R. Civ. P 23(a) and (b), on behalf of the below-defined Classes:

> All BofA accountholders who used the Zelle Service and incurred overdraft or NSF Fees as a result of a Zelle transaction on their account (the "Nationwide Class").
>
> All BofA accountholders in New Jersey who used the Zelle Service and incurred overdraft or NSF Fees as a result of a Zelle transaction on their account (the "New Jersey Subclass").

50. Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

51. This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52. **Numerosity:** The members of the Classes are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Classes is unknown to Plaintiff at this time; however, it is estimated that the Classes number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

53. **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

   a) Whether BofA's representations and omissions about Zelle are false, misleading, deceptive, or likely to deceive;

   b) Whether BofA's misrepresented the NSF and overdraft fee risks of using the Zelle service;

   c) Whether Plaintiff and the Class members were damaged by BofA's conduct;

   d) Whether BofA's actions violated the consumer protection statute invoked herein; and

   e) Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

54. **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Classes. The common questions of law set forth above are numerous and substantial and stem from Defendant's uniform practices applicable to each individual Class member. As such, these common questions

predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

55. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, Plaintiff and all Class members were similarly injured through Defendant's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Classes, was deprived of monies that rightfully belonged to him. Further, there are no defenses available to Defendant that are unique to Plaintiff.

56. **Adequacy of Representation:** Plaintiff is an adequate class representative because he is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Classes, and because their interests do not conflict with the interests of the other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Classes. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

57. **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Classes make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Defendant, and which would establish potentially incompatible standards of conduct for Defendant and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the

interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

**FIRST CAUSE OF ACTION**
**Violation of North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. Ann. §§ 75-1.1, *et seq.***
**(Asserted on Behalf of the Nationwide Class)**

58. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

59. The North Carolina Unfair Trade Practices Act ("NCUTPA"), makes unlawful "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. Ann. § 75-1.1(a).

60. BofA advertised, offered, or sold goods services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b), by offering the Zelle money transfer services through its website and mobile app.

61. A business act or practice is "unfair" under the NCUTPA if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

62. BofA's practices as described herein are immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, *inter alia*, causing injury to consumers which outweigh any purported benefits or utility.

63. As alleged herein, BofA, violated the NCUTPA by knowingly and intentionally representing that it provides "free" and "no fee" money transfer services via Zelle through its

website and mobile app, despite imposing overdraft and NSF fees on consumers' accounts as a result of Zelle transactions.

64. Moreover, as alleged herein, BofA, knowingly and intentionally concealed and failed to disclose material facts regarding use of the Zelle money transfer service in violation of the NCUTPA. Specifically, BofA omitted from all its marketing materials that Zelle may operate as a credit device when a Zelle transfer occurs despite insufficient funds on a consumer's account.

65. BofA's practice of assessing NSF and overdraft fees on its accountholders' Zelle transactions is deceptive and unfair because of BofA's marketing and representations that Zelle transfers from consumers' accounts are free and no-fee.

66. BofA's material omission that Zelle may operate as a credit device when a Zelle transfer occurs despite insufficient funds on an account is deceptive and unfair because of BofA's marketing and representations that Zelle money transfers moves funds already possessed and owned by the accountholder.

67. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding use of the Zelle service, as detailed above, BofA engaged in one or more unfair or deceptive business practices prohibited by the NCUTPA.

68. Defendant's misrepresentations and omissions regarding the Zelle service were made to Plaintiff and the Class members in a uniform manner.

69. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members.

70. The facts regarding Defendant's Zelle service that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members.

71. BofA's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

72. The harm to Plaintiff and the Classes outweighs the utility of BofA's practices. There were reasonably available alternatives to further BofA's legitimate business interests, other than the misleading and deceptive conduct described herein.

73. Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

74. Plaintiff relied on Defendant's misrepresentations.

75. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

76. Had Plaintiff known the true risks of using the Zelle service, he never would have signed up for and used the Zelle service through BofA's website and mobile app.

77. BofA's actions affected commerce in North Carolina and nationwide, as many BofA customers were charged these unfair and deceptive fees.

78. As a direct and proximate result of Defendant's deceptive and unfair conduct, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's

deceptive and unfair conduct is ongoing and present a continuing risk of future harm to Plaintiff and the Class.

79. Plaintiff and the Class members seek an order enjoying Defendant's unfair and deceptive acts or practices in violation of the NCUTPA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available pursuant to the NCUTPA.

**SECOND CAUSE OF ACTION**
Violation of New Jersey Consumer Fraud Act
N.J. STAT. ANN. § 56:8-1, *et seq.*
(Asserted on Behalf of the New Jersey Class)

80. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

81. The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . ." N.J. STAT. ANN. § 56:8-2.

82. Defendant, Plaintiff, and the Class members are "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

83. BofA was and is engaged in "trade" or "commerce" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d) by offering the Zelle money transfer services through its website and mobile app.

84. A business act or practice is "unfair" under the New Jersey CFA if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

85. BofA's practices as described herein are immoral, unethical, oppressive, and/or unscrupulous and violate established public policy as recognized by, *inter alia*, causing injury to consumers which outweigh any purported benefits or utility.

86. As alleged herein, BofA, violated the New Jersey CFA by knowingly and intentionally representing that it provides "free" and "no fee" money transfer services via Zelle through its website and mobile app, despite imposing overdraft and NSF fees on consumers' accounts as a result of Zelle transactions.

87. Moreover, as alleged herein, BofA, knowingly and intentionally concealed and failed to disclose material facts regarding use of the Zelle money transfer service in violation of the New Jersey CFA. Specifically, BofA omitted from all its marketing materials that Zelle may operate as a credit device when a Zelle transfer occurs despite insufficient funds on a consumer's account.

88. BofA's practice of assessing NSF and overdraft fees on its accountholders' Zelle transactions is deceptive and unfair because of BofA's marketing and representations that Zelle transfers from consumers' accounts are free and no-fee.

89. BofA's material omission that Zelle may operate as a credit device when a Zelle transfer occurs despite insufficient funds on an account is deceptive and unfair because of BofA's marketing and representations that Zelle money transfers moves funds already possessed and owned by the accountholder.

90. By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding use of the Zelle service, as detailed above, BofA engaged in one or more unfair or deceptive business practices prohibited by the New Jersey CFA.

91. Defendant's misrepresentations and omissions regarding the Zelle service were made to Plaintiff and the Class members in a uniform manner.

92. Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members.

93. The facts regarding Defendant's Zelle service that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members.

94. BofA's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

95. The harm to Plaintiff and the Classes outweighs the utility of BofA's practices. There were reasonably available alternatives to further BofA's legitimate business interests, other than the misleading and deceptive conduct described herein.

96. Defendant's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

97. Plaintiff relied on Defendant's misrepresentations.

98. Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

99. Had Plaintiff known the true risks of using the Zelle service, he never would have signed up for and used the Zelle service through BofA's website and mobile app.

100. As a direct and proximate result of Defendant's deceptive and unfair conduct, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's deceptive and unfair conduct is ongoing and present a continuing risk of future harm to Plaintiff and the Class.

101. Plaintiff and the Class members seek an order enjoying Defendant's unfair and deceptive acts or practices in violation of the New Jersey CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available pursuant to the New Jersey CFA.

**THIRD CAUSE OF ACTION**
**Breach of Contract Including the Covenant of Good Faith and Fair Dealing**
**(Asserted on Behalf of the Classes)**

102. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

103. Plaintiff and members of the Classes contracted with BofA for checking account services, as embodied in the Deposit Agreement.

104. BofA breached the terms of the contract.

105. Further, under the law of each of the states where BofA does business, an implied covenant of good faith and fair dealing governs every contract. For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state. The covenant

of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

106. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

107. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

108. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

109. BofA breached the covenant of good faith and fair dealing as explained herein.

110. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

111. Plaintiff and members of the Classes have performed all of the obligations imposed on them pursuant to the Bank's agreements.

112. Plaintiff and members of the putative Classes have sustained monetary damages as a result of Defendant's breaches of the contract and covenant of good faith and fair dealing.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that BofA's policies and practices as described herein constitute a breach of contract, a breach of the covenant of good faith and fair dealing or unjust enrichment, and/or a violation of the New Jersey Consumer Fraud Act and North Carolina Unfair Trade Practices Act;

C. Enjoining BofA from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to BofA by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Punitive and exemplary damages;

H. Treble damages and attorneys' fees as provided by law;

I. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

J. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

K. Awarding such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: August 15, 2022

Respectfully submitted,

/s David M. Wilkerson
David M. Wilkerson
**THE VAN WINKLE LAW FIRM**
NC State Bar No. 35742
11 N. Market Street
Asheville, NC 28801
828-258-2991
Fax: 828-257-2767
dwilkerson@vwlawfirm.com

Jeffrey D. Kaliel
Sophia Gold
**KALIEL GOLD PLLC**
1100 – 15th St. NW, 4th Floor
Washington, D.C. 20005
jkaliel@kalielpllc.com
sgold@kalielpllc.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Edwin E. Elliott, Esq.
Florida Bar No. 1024900
edwine@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
(t) (305) 479-2299

*Counsel for Plaintiff and the Proposed Class*